UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTIRA BRADY and ROBERT LUKASZYK, individually and on behalf of all others similarly situated, | )<br>)<br>) 18 C 6968<br>) |
| Plaintiffs, | ) Judge Gary Feinerman<br>) |
| vs. | )<br>) |
| SPERIAN ENERGY CORPORATION, | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In this diversity suit on behalf of themselves and a putative statewide class, Intira Brady and Robert Lukaszyk allege that Sperian Energy Corporation violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and state common law in connection with its sale of electricity to them. Doc. 24. Invoking a forum selection clause, Doc. 24-2 at 3, Sperian moves under 28 U.S.C. § 1404(a) to transfer the suit to the Central District of Illinois. Doc. 28. The motion is granted.

**Background**

In resolving a motion to transfer under 28 U.S.C. § 1404(a), the court accepts the operative complaint's well-pleaded factual allegations, as supplemented by the parties' evidentiary materials, and draws all reasonable inferences in Plaintiffs' favor. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 808-09 (7th Cir. 2016); *Crothall Laundry Servs., Inc. v. OSF Health Care Sys.*, 2018 WL 1695364, at *4 (N.D. Ill. Apr. 6, 2018) (St. Eve, J.). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set

1

forth in Plaintiffs' brief opposing transfer, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as the relevant materials permit. *See Deb*, 832 F.3d at 804, 808; *Crothall*, 2018 WL 1695364, at *4. In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Sperian, an alternative retail electric supplier, sells electricity to Illinois customers at a purported discount from the prices offered by public utility companies. Doc. 24 at ¶¶ 2-4, 20, 28-29, 41; *see* 220 ILCS 5/16-102 (differentiating an "alternative retail electric supplier" from a "public utility"). Under the "Sperian Energy Corp Illinois Electric Service Area Customer Terms and Conditions," which will be called the "Customer Agreement," Sperian customers can purchase electricity (1) at a fixed rate for a limited term, or (2) at a month-to-month variable rate. Doc. 24 at ¶¶ 9, 44-45; Doc. 24-2 at 2 (providing that Sperian's electricity service "is provided under either a term product or a variable (month-to[-]month) product").

When they first purchased electricity from Sperian in 2012, Plaintiffs enrolled in a fixed rate plan lasting one year. Doc. 24 at ¶¶ 13-14, 17-18, 64; Doc. 24-1. The Customer Agreement warned that "[t]his agreement does not renew automatically" and that if the customer "do[es] not choose a new [fixed rate] plan" before "the end of the initial term," the customer's "plan will rollover into a month-to-month variable rate." Doc. 24-2 at 2.

Although the Customer Agreement provided that Sperian would send "[a] contract-expiration notice … at least thirty (30) days but no more than sixty (60) days prior to the end of [the] initial contract term" that would explain "renewal options," Doc. 24-2 at 2, Plaintiffs never received such a notice, Doc. 24 at ¶ 69. Because Plaintiffs failed to select a new fixed rate plan,

Sperian placed them in a variable rate plan when their initial fixed rate plan expired. *Id*. at ¶¶ 16, 18-19, 66, 72. Plaintiffs remained in a variable rate plan until their relationship with Sperian ended in 2018. *Id*. at ¶¶ 13, 15, 17, 66.

Plaintiffs allege that Sperian failed to disclose that it would roll them over to a variable rate plan that is more expensive than public utilities' electricity service. *Id*. at ¶¶ 9-10, 82, 90-95, 101. Plaintiffs claim that Sperian's misleading disclosures about its pricing and the transition from the fixed rate plan to the variable rate plan violate the ICFA and constitute common law fraud and unjust enrichment. *Id*. at ¶¶ 111-142. Plaintiffs brought a breach of contract claim in their original complaint, Doc. 1 at ¶¶ 82-89, but abandoned it in the operative complaint, Doc. 24.

## Discussion

Sperian moves under 28 U.S.C. § 1404(a) to transfer this case to the Central District of Illinois pursuant to the Customer Agreement's forum selection clause. Doc. 28 at 5-11. The forum selection clause provides: "This Agreement shall be governed by and construed, enforced and performed in accordance with the laws of Illinois and venue shall be in Sangamon County, Illinois," which is located in the Central District. Doc. 24-2 at 3.

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Where a valid forum selection clause governs a suit, the "clause should be given controlling weight in all but the most exceptional cases," and "the party defying the forum-selection clause … bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63

3

(2013) (alteration and internal quotation marks omitted); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.") (internal quotation marks omitted). Accordingly, the court first determines whether the Customer Agreement's forum selection clause governs this suit and then, applying the standard that follows from that determination, evaluates whether transfer is warranted.

I.  **Whether the Forum Selection Clause Applies to This Suit**

Determining whether the forum selection clause applies to this suit requires interpreting the clause under "the law designated in the [Customer Agreement's] choice of law clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014); *see also Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) (holding that "determining the validity and meaning of a forum selection clause" requires "reference to the law of the jurisdiction whose law governs the rest of the contract"). The Customer Agreement selects Illinois law, Doc. 24-2 at 3, so Illinois law governs interpretation of the clause.

Illinois law "honors straightforward terms with understandable meanings" in a forum selection clause. *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 992 (7th Cir. 2008); *see also Fabian v. BGC Holdings, LP*, 24 N.E.3d 307, 313 (Ill. App. 2014) ("Illinois public policy favors the enforcement of forum-selection clauses … ."). Significant here, Illinois law holds that a forum selection clause governs not only claims that arise under the contract in question, but also "tort claims which require interpretation of the contract." *Abbott Labs.*, 476 F.3d at 424 (emphasis deleted) (quoting *Boatwright v. Delott*, 642 N.E.2d 875, 877 (Ill. App. 1994)); *see also Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884,

889 (7th Cir. 2004) ("[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance."); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action."). Put somewhat differently, forum selection clauses "apply not merely to contract claims involving the terms of the contract in which the clause appears, but also to other claims that are otherwise connected to the contract, such as tort claims arising from the contract." *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 182 (Ill. App. 2014).

Plaintiffs' ICFA, fraud, and unjust enrichment claims "require interpretation of the" Customer Agreement to determine, for example, whether and how Sperian could transfer fixed rate customers into variable rate plans, and whether Sperian had unlimited discretion to set the variable rate. *Boatwright*, 642 N.E.2d at 877. Plaintiffs' abandonment of their contract claim has no bearing on whether the forum selection clause applies, for "[w]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such bargain as to the appropriate forum for litigation." *Solargenix*, 17 N.E.3d at 182 (alteration omitted) (quoting *Hugel*, 999 F.2d at 209); *see also Am. Patriot*, 364 F.3d at 889 ("As for the fact that the defendants are charged with fraud rather than breach of contract, this can get the plaintiff nowhere in its efforts to get out from under the forum-selection clause."); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ("We have routinely held that a party may not avoid a contractual arbitration clause merely by casting its complaint in tort. The touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause.")

5

(citation and internal quotation marks omitted). Indeed, the operative complaint's extensive focus on the Customer Agreement's terms, Doc. 24 at ¶¶ 15, 50-57, 62-63, 65, 69-70, 72-75, 113-114, confirms that interpretation of the Agreement is central to Plaintiffs' claims and therefore that those claims fall within the forum selection clause's ambit. *See Am. Patriot*, 364 F.3d at 889 ("[T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes."); *Boatwright*, 642 N.E.2d at 877 ("[P]laintiffs' fraud claim is intimately connected with the contract's terms; its resolution requires analysis of the employment relationship and the commission schedule, both of which are spelled out in the contract itself. The forum selection clause in this case applies to plaintiffs' fraud claim … .").

Plaintiffs respond that the forum selection clause no longer applies because the Customer Agreement expired along with their initial fixed rate plan and their claims concern only the variable rate plan. Doc. 31 at 5-14. The court need not decide when the Agreement expired because the forum selection clause applies to Plaintiffs' claims even if the Agreement expired before Sperian completed its allegedly tortious conduct. *See Andermann v. Sprint Spectrum LP*, 785 F.3d 1157, 1158 (7th Cir. 2015) (reversing the district court's holding that "since Sprint's contract with [the plaintiffs] terminated before the phone calls that are the basis of this lawsuit, the dispute over the legality of the calls could not have arisen from or related to the contract"); *U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd.*, 612 F. App'x 671, 672-73 (4th Cir. 2015) ("Generally, dispute-resolution provisions, such as forum-selection clauses, are enforceable beyond the expiration of the contract if they are otherwise applicable to the disputed

issue and the parties have not agreed otherwise.") (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991)); 13 Corbin on Contracts § 67.2 (rev. ed. 2018) ("[N]either termination nor cancellation [of a contract] affect those terms that relate to the settlement of disputes or choice of law or forum selection clauses."). Resolving Plaintiffs' claims turns on issues that arose when the Agreement undisputedly remained effective, including whether and under what conditions Sperian could place fixed rate customers into a variable rate plan. Doc. 24 at ¶ 113. Had the parties "wished to limit" temporally the forum selection clause's application, they "could have said so explicitly" in the Agreement. *Sweet Dreams*, 1 F.3d at 643; *see also Advent Elec., Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989) ("In the absence of contractual language expressly or implicitly indicating the contrary, a forum selection clause survives termination of the contract. … Whether … [the plaintiff's] cause of action … accrued[] before or after termination is irrelevant to application of the forum selection clause."). As a result, the forum selection clause applies even if the Agreement expired along with the expiration of Plaintiffs' fixed rate plan.

To support the contrary result, Plaintiffs cite *Laferte v. myFootpath, LLC*, 2014 WL 12591801 (C.D. Cal. July 18, 2014), which held that the forum selection clause there did not apply to claims that arose "five months" after the contract "expired." *Id*. at *2-3. Even if *Laferte* were on point factually, the court would decline to follow it, as it did not apply Seventh Circuit or Illinois law, and "the persuasiveness of the reasoning underlying [district court] decisions is at its lowest when, as here, it comes from courts that are not bound by the precedents of this circuit." *Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 697 (7th Cir. 1998).

In sum, because the Customer Agreement's expiration does not render the forum selection clause ineffective, and because the court must construe the Agreement to resolve Plaintiffs' claims, the forum selection clause applies to those claims.

## II. Whether Transfer Is Appropriate Under 28 U.S.C. § 1404(a)

The conclusion that the Customer Agreement's forum selection clause applies to Plaintiffs' claims does not end the analysis, for even where a forum selection clause governs, the court must consider whether it is overridden by the public interest factors that ordinarily apply under § 1404(a). *See Mueller*, 880 F.3d at 894 ("[W]hen a forum-selection clause is in play, the [§ 1404(a)] analysis is limited to public-interest factors."). The public interest factors are "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law," *Atl. Marine*, 571 U.S. at 62 n.6 (alteration and internal quotation marks omitted), as well as "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law[] and the unfairness of burdening citizens in an unrelated forum with jury duty," *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 868 (7th Cir. 2015) (internal quotation marks omitted). "[B]ecause those factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases." *Mueller*, 880 F.3d at 894 (internal quotation marks omitted).

Plaintiffs' sole argument against transfer to the Central District of Illinois is that the forum selection clause does not apply to their claims, so they have forfeited any argument that the § 1404(a) public interest factors preclude transfer. *See Lee v. Ne. Ill. Reg'l Commuter R.R.*, 912 F.3d 1049, 1053-54 (7th Cir. 2019) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. … This rule applies

8

when a party fails to develop arguments related to a discrete issue … .") (internal quotation marks omitted). Even setting aside forfeiture, no public interest factor disfavors the intrastate transfer of this putative statewide class action. *See Atl. Marine*, 571 U.S. at 64 (explaining that public interest "factors will rarely defeat a transfer motion"). Because Plaintiffs "have not identified a single public interest to justify overriding the contractual choice of forum," *Mueller*, 880 F.3d at 894-95, transfer to the Central District of Illinois under § 1404(a) is appropriate. *See In re Mathias*, 867 F.3d 727, 731 (7th Cir. 2017) ("The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (internal quotation marks omitted).

**Conclusion**

Sperian's motion to transfer is granted. This case is transferred to the Central District of Illinois under 28 U.S.C. § 1404(a).

May 16, 2019

_____
United States District Judge